## CALLAHAN *v.* LOUISVILLE & NASHVILLE R. CO.

*(Circuit Court, M. D. Tennessee. May, 1882.)*

1. INTERSTATE CORPORATION—REMOVAL OF CAUSES.

The act of the Tennessee legislature entitled "An act to incorporate the Louisville & Nashville Railroad Company" was simply the grant of a license or right of way to that company to construct its railroad into the state of Tennessee, under its charter granted by the state of Kentucky, and it did not create a new corporation of that name in Tennessee.

*Railroad Co.* v. *Harris*, 12 Wall. 66, cited and followed.

2. SAME—LEASE BY A CORPORATION OF ONE STATE OF A RAILROAD CHARTERED
   BY ANOTHER STATE.

      The fact that the Louisville & Nashville Railroad Company, a corporation of
   Kentucky, leased and was operating a railroad chartered by Tennessee, and upon
   which the accident occurred, did not make that company a citizen of Tennes-
   see, nor prevent it from removing a case to the federal court when sued in a
   state court of Tennessee.

3. CORPORATIONS—LIABILITY TO EMPLOYES—CONTRIBUTORY NEGLIGENCE.

      Though corporations should be held to a high degree of care in favor of the
   public, this can only be done by requiring each individual employe of the cor-
   poration to perform his duty diligently; and where such employe receives an
   injury which is the proximate result of his own negligence it would be contrary
   to public policy to allow him to recover damages against the company.

The Louisville & Nashville Railroad Company was originally char-
tered by the legislature of Kentucky, and thereafter was granted cer-
tain rights by the legislature of Tennessee; its line of road extending
from Louisville, Kentucky, to Nashville, Tennessee.   Subsequently it
leased from the Nashville & Decatur Railroad Company, a corpora-
tion chartered by the legislature of Tennessee, its road connecting
the city of Nashville with the town of Decatur, in the state of Ala-
bama.   In the operation of this last-named road the Louisville &
Nashville Railroad Company employed the plaintiff as section fore-
man, and placed him in charge of a section of said Nashville & Deca-
tur Railroad.   While in said service the plaintiff received certain per-
sonal injuries, resulting from a collision between a push car, which
he was operating on said railroad, and the regular passenger train.
This action was brought in the circuit court of Williamson county,
Tennessee, to recover damages for such injuries, and was removed to
the circuit court of the United States for the middle district of Ten-
nessee, upon the petition of the defendant, under the acts of congress
in such case made and provided; the grounds alleged for the re-
moval being the citizenship of the defendant in the state of Ken-
tucky.

      The motions by the plaintiff to dismiss the petition and remove the
cause to the state court, upon grounds appearing on the face of the
petition, having been overruled, the case was submitted to the court
and jury, with leave to both parties to introduce evidence as to the
citizenship of the defendant.

      *Bate & Williams*, for plaintiff.

      *Joseph B. Campbell, Smith & Allison*, and *Ed. Baxter*, for defend-
ant.

      KEY, D. J.   The first question to be decided is one of jurisdiction.
The defendant, in its petition, bases its right to remove this cause

here from the circuit court of Williamson county, Tennessee, where it was impleaded, upon the theory that it is a citizen of Kentucky and not a citizen of Tennessee. This is purely a matter of construction of its charter—of legislative intent. How and by whom was this artificial being created? The Louisville & Nashville Railroad Company was incorporated by the legislature of Kentucky by an act approved March 5, 1851, and amended by an act of said legislature approved March 20, 1851. The original act contains the usual corporate powers to construct a railroad "from the city of Louisville to the Tennessee line, in the direction of Nashville;" and by the amendment the company was authorized to connect its road "with any railroad extending to Nashville." The legislature of Tennessee passed an act December 4, 1851, entitled "An act to incorporate the Louisville & Nashville Railroad Company," by the first section of which it was provided:

"That the right of way for the construction of a railroad from the line between the states of Kentucky and Tennessee, so as to connect the cities of Louisville and Nashville by railroad communication, be and is hereby granted to the Louisville & Nashville Railroad Company, incorporated by the legislature of Kentucky, with all the rights, powers, and privileges, and subject to all the restrictions and liabilities, set forth and prescribed in a charter granted to said company by the legislature of Kentucky, and approved March 5, 1851, and the amendments thereto, passed by said legislature, and approved March 20, 1851, for the term of 999 years, except as further provided in this act."

We do not find anywhere in this act terms conferring corporate powers upon the Louisville & Nashville Railroad Company. No one is named as an incorporator, nor are there any of the common words employed by which legislative bodies are in the habit of creating corporate existence; it is merely the "right of way" that is granted a corporation, already in the enjoyment of full corporate life and power, under its charter from Kentucky, to construct its track from the state line to the city of Nashville. The fourth section of said act provides that the stockholders in the state of Tennessee shall be entitled to be represented by directors residing in Tennessee, in proportion to their stock, to be chosen by the stockholders of the company, in the manner and at the time the other directors are chosen. There is to be but one board of directors, one corps of general officers, and one management. As a matter of fact these have always been located at Louisville, in the state of Kentucky; and there are its machine shops and general offices. It has never established any department in Tennesse, except its agencies, and no meeting of its stock-

holders has ever been held in Tennessee. In all of its practical operations it was and has always continued a corporation foreign to this state.

It is argued that if it was only a foreign corporation it would not have had the right granted it to condemn land, construct its track, and carry on a general railroad business in the state of Tennessee. It certainly could not do such corporate acts within her territory without the consent of the state. But we think it is quite clear that all of these things may be done by a foreign corporation without granting a formal charter; a mere license is sufficient, without making the company a Tennessee corporation. It is not unusual for our legislature to grant certain rights to corporations organized under the laws of other states, without any intention to confer a new charter or readopt the old one. Several of our important lines of railroads are at present operating in this state under such legislative license; yet they are conceded to be citizens of other states.

If it were necessary to have a precedent for this ruling the case of *Railroad Co.* v. *Harris,* 12 Wall. 66, seems to us to be very much in point. There the Baltimore & Ohio Railroad Company was chartered by the legislature of Maryland to construct a railroad from the city of Baltimore to some point on the Ohio river. Soon thereafter the legislature of Virginia passed an act as follows:

" Whereas, an act has passed the legislature of Maryland, entitled ' An act to incorporate the Baltimore & Ohio Railroad Company, in the following words and figures, viz., [setting out the Maryland act;] therefore, be it enacted by the general assembly, that the same rights and privileges shall be and are hereby granted to the aforesaid company, within the territory of Virginia, as are granted to them within the territory of Maryland."

Then follows a grant to the said railroad company of rights and privileges very similar to those conferred upon the defendant in this suit. The supreme court of the United States, in constructing this statute of Virginia, looked to the object and intention of the legislature alone. It said:

" The company was chartered to construct a road in Virginia as well as in Maryland. The latter could not be done without the consent of Virginia. That consent was given upon the terms which she thought proper to prescribe. With a few exceptions, not material to the question before us, they were the same as to powers, privileges, obligations, restrictions, and liabilities as those contained in the original charter. The permission was broad and comprehensive in its scope, *but it was a license and nothing more.* It was given to the Maryland corporation as such, and that body was the same in all its elements and its identity afterwards as before. In its name, locality, capital stock, the

election and power of its officers, in the mode of declaring dividends and doing all its business, its unity was unchanged only the sphere of its operations was enlarged."

The Baltimore & Ohio Railroad Company had also constructed its road in the District of Columbia, under the provisions of an act of congress approved March 2, 1831. That act was also construed, in the opinion above quoted from, and is as follows:

"Whereas, it is represented to the present congress that the Baltimore & Ohio Railroad Company, incorporated by the general assembly of the state of Maryland by an act passed on the twenty-eighth of February, 1827, are desirous, under the powers which they claim to be vested in them by virtue of the provisions of the before-mentioned act, to construct a lateral branch from the said Baltimore & Ohio Railroad to the District of Columbia; therefore, be it enacted, etc., that the Baltimore & Ohio Railroad Company, incorporated by the said act of the general assembly of the state of Maryland, shall be and they are hereby authorized to extend into and within the District of Columbia a lateral railroad, such as the said company shall construct, or cause to be constructed, in a direction towards the said district, in connection with the road they have located and are constructing from the city of Baltimore to the Ohio river, in pursuance of said act of incorporation; and the said Baltimore & Ohio Railroad Company are hereby authorized to exercise the same powers, rights, and privileges, and shall be subject to the same restrictions in the construction and extension of the said lateral branch road into and within the said district, as they may exercise or be subject to, under or by virtue of the said act of incorporation, in the extension and construction of any railroad within the state of Maryland, and shall be entitled to the same rights, benefits, and immunities in the use of said road, and in regard thereto, as are provided in the said charter, except the right to construct any lateral branch road or roads in said district from said lateral roads."

Like the Tennessee act in question, it will be seen that this act of congress refers to the original act of incorporation, but does not set it out; recites the fact that the corporation had been chartered by the legislature of Maryland; authorizes the road to be extended into the District of Columbia, and authorizes the exercise of the same rights by the company in the extension of its road as it possessed in the state of its creation. On that branch of the case the supreme court say:

"When the case was reargued, as directed by this court, the counsel for the company admitted that the acts of congress in question were only enabling acts, and that they did not create a new corporation, but they insisted that the acts of Virginia were of a different character, and that they worked that result. As regards the point under consideration, we find no substantial difference. In both, the original Maryland act of incorporation is referred to, *but neither expressly nor by implication created a new corporation.*"

Other analogous cases might be cited, but we are content to place our ruling upon the authority of the case of *Railroad Co.* v. *Harris.* We think the principle of that case settles the jurisdiction of the case at bar. We are satisfied that the Louisville & Nashville Railroad Company is a citizen of Kentucky and not of Tennessee. We apprehend that the right of removal would depend upon the citizenship of the lessee road; for, although the railroad track upon which the accident occurred was owned by a citizen of Tennessee, it was not then in its possession, but was being operated by the defendant, in whose service the plaintiff was at the time.

Then, assuming jurisdiction of the case, is the plaintiff entitled to the damages claimed? It appears from the proof that he was a section foreman, in charge of that particular section of defendant's railroad upon which its injury was sustained; that he had been notified by his track-walker of a defect in the track at the northern end of his section, and that he was on his way to repair the same; that he had started with his push car, on the track, loaded with the tools necessary to work the repairs; that his crew pushed the car, while he stood on the front of it, on the lookout ahead; that several stops were made at his direction to listen for an approaching train. While passing through a cut, which to some extent obstructed his view of the track in front, the plaintiff saw ahead of him smoke ascending from the engine of an approaching train, distant about one-fourth of a mile. He immediately jumped from the car, ordered his crew to get it from the track, and, with his assistance, it was removed in time to clear the track for the unobstructed passage of the engine, tender, and baggage car of the train; but some of the section men, becoming frightened by the proximity of the passing train, loosened their hold upon the push car, and, the plaintiff and those who remained with him not being able to withstand the double weight, the push car fell back upon the passing train, striking the smoking car, by which it was thrown from the track so violently against the plaintiff that his leg was broken. There was some conflict in the testimony as to whether there was a lookout upon the engine; whether he saw the obstruction as soon as it could have been seen; and whether all means were employed to stop the train and prevent an accident; but the preponderance of testimony on this point is with defendant. The Code of Tennessee provides:

"Every railroad company shall keep the engineer, fireman, or other person upon the locomotive always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road the alarm-whistle shall be

sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident." ' Section 1166.

"Every railroad company that fails to observe these precautions, or cause them to be observed, shall be responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur." Section 1167.

"No railroad company that observes, or causes to be observed, these precautions shall be responsible for any damages done to person or property on its road. The proof that it has observed said precautions shall be upon the company." Section 1168.

These statutes have been repeatedly very rigidly construed by the supreme court of Tennessee; but from the view we take of this case we do not consider it very material to inquire whether the defendant has complied strictly with these regulations in every particular. It appears that the passenger train was running on time, and by the same schedule that had been in force for years. It was a question in dispute whether the plaintiff was misled as to the correct time by the time-piece in the company's office at the point from which he started. But it is not controverted that he ran his push car up into the cut, where he could not see nor hear an approaching train in time to remove the car from the track, without protecting himself by a flagman in advance of his car to give the signal of danger. In no other way could the defendant be assured of having a clean track for the passage of its trains, and in no other way could the plaintiff safely perform his duties. In failing to do this the plaintiff was guilty of such negligence as should bar his recovery in this action. It is true, as has been argued before us, it is the duty of courts to hold corporations to a high degree of care; public policy demands it. But we know of no surer way of enforcing this doctrine than by requiring each individual employe of the corporation to perform his duty diligently; in fact, that is the only way of enforcing it, as the corporation can only act through its employes.

Now, in the case at bar, if the collision had resulted in an injury to a passenger upon the train colliding with the push car, or to one of the section men under the plaintiff's command, there would have been no doubt of the liability of defendant, because the accident would have been the proximate result of plaintiff's negligence,—the negligence of one of defendant's employes. To allow a recovery, then, in a suit by the author of the collision, would be offering a premium for negligence; and would be very oppressive to common carriers, and detrimental to the interests of the public. We think the plaintiff could very well have averted the accident by the exercise of ordinary

care; and, having failed to do so, he should not be allowed to recover. I think, from the proof, that defendant complied with the requirements of the Code of Tennessee, § 1166, and that plaintiff brought the injury upon himself by his own want of care and prudence; and, so thinking, I should feel it my duty to set aside the verdict of the jury if one were found in favor of the plaintiff, and to grant a new trial. I therefore instruct you to return a verdict in favor of the defendant.

See *Texas & P. R. Co.*, notes of cases, *post.*